The JEFFERSON AIRPLANE and Afterthought Productions, Inc. dba Grunt Records, Plaintiffs,

v.

BERKELEY SYSTEMS, INC., Defendant.

No. C 94–2114 FMS.

United States District Court, N.D. California.

Oct. 4, 1994.

Joseph B. Anderson, Tiburon, CA, for plaintiffs.

---

**714**

Mark Steiner, Marc M. Gorelnik, Town-send & Townsend Khourie & Crew, San Francisco, CA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

FERN M. SMITH, District Judge.

### ISSUES

The issue raised by this motion is whether, under the 1971 Sound Recording Amendment to the Copyright Act of 1909, the registration of a copyright over a sound recording encompasses the artwork on the album cover.

### BACKGROUND

The Jefferson Airplane is a world famous musical group that was at the center of the rock music scene of the late sixties and early seventies. In 1973, The Jefferson Airplane released a record album entitled *Thirty Seconds Over Winterland* (*"Thirty Seconds"*). The album cover features an illustration depicting a group of two-slice, fifties-style, rounded toasters with white wings and clocks flying in squadron formation across the sky. In 1989, the album was re-released on compact disc with the same cover art. To date, about 500,000 copies of the record and compact disc have been sold world-wide.

Afterthought Productions, Inc. is a California corporation responsible for managing most of the business affairs of The Jefferson Airplane. It is owned by The Jefferson Airplane, Bill Thompson (The Jefferson Airplane's long-time manager), and China Kantner (the daughter of two of the band's members). Afterthought Productions, Inc. owns and operates a record label called Grunt Records. Afterthought Productions, Inc., dba Grunt Records, produced or held titular ownership in certain sound recordings created by The Jefferson Airplane and other groups. Grunt Records produced and owns the copyright to *Thirty Seconds*.

Defendant Berkeley Systems ("Berkeley") creates and sells software for personal computers. In 1989, it introduced a "screen saver" computer product entitled *After Dark*. A screen saver prevents "burn-in" damage to the user's monitor by displaying moving images during periods of inactivity. *After Dark* comes with a number of different display choices, called modules. One such module, called "Flying Toasters," shows a squadron of two-slice, fifties-style, rounded toasters with wings "flying" across the computer screen. The "Flying Toasters" module was introduced in 1990 and has become very popular in the computer industry.

Sound recordings were not copyrightable by law until February 15, 1972. On April 19, 1973, the sound recording *Thirty Seconds* was registered with the Copyright Office of the United States, on the newly available "Form N", which was established specifically for registering a claim of copyright in a published sound recording. The Form N filed for *Thirty Seconds* listed plaintiff Grunt Records as the author of the sound recording. On the published album, the circle P (phonorecording copyright notice) appears on the label in the center of the LP and the circle c (copyright notice) appears on the back side of the album cover.

Berkeley has obtained a United States copyright registration and trademark registration for the "Flying Toasters" module. In 1993, Berkeley brought a copyright and trademark infringement lawsuit in the Northern District of California against the Delrina Corporation, a software manufacturer and competitor of Berkeley. Delrina had begun to market a competitive screen saver program which incorporated the "Flying Toaster" design protected by Berkeley. On October 8, 1993, this court (Lynch, J.) found that Berkeley made a *prima facia* showing of copyright infringement and granted Berkeley's Motion for a Preliminary Injunction against Delrina.

On June 14, 1994, plaintiffs filed this action, claiming that Berkeley's *After Dark* "Flying Toaster" module infringes their copyrights to the *Thirty Seconds* album. Defendants filed this Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim under Fed.R.Civ.P. 12(b)(6).

### DISCUSSION

#### I. Legal Standard

A plaintiff may not bring an action for copyright infringement unless the copyright

claim is registered with the Copyright Office of the United States. 17 U.S.C. § 411(a) (West 1994). Such registration is a jurisdictional prerequisite to a suit for infringement. *Hung Tang v. Ho Yong Hwang,* 799 F.Supp. 499, 503 (E.D.Pa.1992). For plaintiffs to state a claim for which relief can be granted, and for the Court to assert jurisdiction over this case, the Court must find that the registered copyright claim to *Thirty Seconds* includes the disputed artwork that appears on the cover of the published record album and compact disc.

## II. Governing Law

The Copyright Act of 1976 substantially revised copyright law in the United States. The 1976 Act superseded, to a large extent, the previously governing Copyright Act of 1909. In determining the corpus of law that governs a particular situation, the governing law is the law in effect when the infringement or other activity upon which a suit is based arises. D. Nimmer & M. Nimmer, 5 *Nimmer on Copyright* Overview at OV–9 (1993) ("Nimmer"). The 1976 Act generally governs any infringement or undertaking allegedly occurring after January 1, 1978, the date the 1976 act took effect. The 1909 Act continues to govern any infringement or undertaking allegedly occurring before January 1, 1978. *Id.; See e.g., Lone Ranger Television, Inc. v. Program Radio Corp.,* 740 F.2d 718 (9th Cir.1984) (applying the Copyright Act of 1909 to interpret scope of a copyright registered in 1954 and allegedly infringed in 1979).

### A. 1973 Law Controls in Determining Scope of Copyright

The *Thirty Seconds* copyright was registered prior to January 1, 1978. The Transitional and Supplementary Provisions of the 1976 Copyright Act provide that the scope of a copyright registration for phonorecords first published before January 1, 1978 is governed by the Copyright Act of 1909 as it existed on December 31, 1977. Copyright Act of 1976, Transitional and Supplementary Provisions Secs. 109 & 110 (1976) *reprinted in 5 Nimmer* app. at 2–148. Further, the adequacy of the notice requirements for any phonorecord publicly distributed before January 1, 1978 are governed by the Copyright Act of 1909. The notice requirements for any phonorecord publicly distributed on or after January 1, 1978 are governed by the Copyright Act of 1976. Copyright Act of 1976, Transitional and Supplementary Provisions Sec. 108 (1976) *reprinted in 5 Nimmer* app. at 2–147.

### B. Current Law Controls in Determining Whether The Airplane Has Standing to Sue

The alleged copyright infringement at the core of this suit occurred no earlier than 1989. Current copyright law therefore governs whether or not The Jefferson Airplane has standing to sue.

### III. Plaintiffs' Registration of Copyright for Sound Recording Did Not Include the Cover Artwork

The 1909 Copyright Act provided that the "application for registration shall specify to which of the following classes the work in which copyright is claimed belongs." Copyright Act of 1909, 17 U.S.C. § 5 (1977). In 1977, Section 5 of title 17 provided fourteen "classes" (class A through class N) of works in which copyright may be claimed. For example, class A protected books, class D protected dramatic compositions, class E protected musical compositions, etc. Class N was added to section 5 by a Congressional amendment on October 15, 1971. 17 U.S.C.A. § 5 (West 1972). Effective February 15, 1972, class N provided copyright protection in sound recordings for the first time. *Id.* Congress created class N in order to deal with the pirating of sound recordings, a problem exacerbated by the increasing popularity of phonographs and cassette tape recorders. House Report on the Sound Recording Amendment of 1971, H.R.Rep. No. 92–487, 92nd Cong., 1st Sess. (1971), *reprinted in 6 Nimmer* app. at 18–1.

Copyright Office rules expressly stated that sound recordings had to be registered in Class N. Circular # 56, "Copyright for Sound Recordings", Copyright Office of the United States, p. 6 (1976) ("Circular # 56"). The nature of the works to be registered in Class N was defined in the Code of Federal Regulations:

Sound recordings (Class N): (a) This class includes published sound recordings, i.e. works that result from the fixation of a series of musical, spoken, or other sounds. Common examples include recordings of music, drama, [etc.] ... as published in the form of phonorecords such as discs, tapes, cartridges [etc.] ...

37 C.F.R. § 202.15a(a) (1973).

Defendant argues that the scope of plaintiff's class N copyright registration No. N6051 includes the musical recording only, not the art on the cover of *Thirty Seconds,* which should have been registered separately in class K, labeled "Prints and pictorial illustrations including prints or labels used for articles of merchandise." Because the class N registration is plaintiff's only copyright registration relating to *Thirty Seconds,* defendant claims the disputed artwork is unregistered; therefore, this action must be dismissed for failure to state a claim and for lack of subject matter jurisdiction.

While a colorable argument can be made that cover art is included in a registration of a sound recording under Class N, the language defining class n and subsequent pronouncements and practices of the Copyright Office make clear that separate registrations are required.

The Ninth Circuit rule is that "the Register has the authority to interpret the copyright laws and that its interpretations are entitled to judicial deference if reasonable." *Marascalco v. Fantasy, Inc.,* 953 F.2d 469, 473 (9th Cir.1991), *cert. denied,* 504 U.S. 931, 112 S.Ct. 1997, 118 L.Ed.2d 592 (1992). If controlling, these Practices establish the plaintiffs' proffered copyright registration covers the facially claimed sound recording work only.

Defendant has provided the Court with a certified copy of a portion of the Copyright Office Examination Practices to support its interpretation of the scope of plaintiffs' sound recording registration. The Practices state:

*Sound recording distinct from other copyrightable component parts.* Registration in Class N cannot extend protection to copyrightable matter appearing on a jacket, liner notes, or container, etc., even though such items form a part of the deposit for registration in Class N. One basis of this rule is the divergent statutory requirements regarding the correct form of notice applies to all works except sound recordings, which works demand a special form of notice.

"Practices of the Examining Division in the Registration of Sound Recordings (Class N)," dated June 22, 1972. Defendants also provide a Declaration from the current Register of Copyrights, Marybeth Peters, who was an Examiner in the Music Section of the Examining Division of the Copyright Office from 1966 to 1975. Ms. Peters declares:

As a matter of practice, the Examining Division would not, and to the best of my knowledge, did not, issue a single registration to cover both a sound recording in Class N and other copyrightable material. Pursuant to the [P]ractices ... Class N registrations were limited in scope to the sound recording itself. Liner notes, lyrics, illustrations, booklets, and another material accompanying the sound recording were required to be registered separately in either Class A or Class K.

Peters Decl., ¶ 4.

Further support for defendant's position is provided by the Copyright Office publication, Circular # 56, one portion of which is entitled "Copyright for Sound Recordings". It states that "[i]n many cases sound recordings are first published with other copyrightable material as a unit. Examples are: discs published in jackets which contain substantial original textual or pictorial matter and which bear a copyright notice appropriate for that material...." Circular # 56, p. 6. Circular # 56 then provides that *"with the exception of the sound recording,"* these other materials "may qualify for registration as a 'book' on Form A" if appropriate notice is given, *e.g.,* a circled "C". *Id.* (emphasis added). Critically, it continues:

While registrants have the option of registering one claim in class A for a published combination of various material, separate registrations may be made of the different parts, provided that they bore their own copyright notices from the time of first publication. *Separate registration in*

*Class N must be made in every case for the sound recording.*

*Id.* (emphasis added). The reasonable conclusion drawn from Circular # 56 is that separate registration was required for the sound recording and the album cover art.

Plaintiffs contend that, even if the registration was faulty, it was merely an error in classification which cannot affect the copyright protection afforded the artwork. Indeed, Section 5, after listing each of the classes in which copyright registration may be made, provides that "the above specifications shall not be held to limit the subject matter of copyright ... nor shall any error in classification invalidate or impair the copyright protection secured under this title." Title 17 U.S.C. § 5; *see also, Hearst Corp. v. Stark,* 639 F.Supp. 970, 974 (N.D.Cal.1986) ("errors in copyright registration ... do not invalidate the copyright or render the registration certificate incapable of supporting an infringement action"). Registration in separate classes was intended to enhance the efficiency of the Copyright Office, and not to legally limit the scope of copyrighted material. House Report on the Copyright Act of 1909, H.R.Rep. No. 2222, 60th Cong., 2nd Sess. (1909) ("Section 5 refers solely to a classification made for the convenience of the Copyright Office and those applying for copyrights") *reprinted in* 6 *Nimmer* app. at 13–15.

Even if plaintiffs' failure to separately register the cover artwork could be interpreted as a mere error in classification, a conclusion the Court does not reach, there is no mistaking the fact that the registration application unambiguously claims a copyright in "music" alone. Complaint, Exh. B. There is no explanation for plaintiffs' failure to expressly describe in the application for registration all materials in which copyright is allegedly claimed. It is well-settled that merely depositing the album cover with the Library of Congress cannot expand the scope of the copyright claimed in the registration. *National Conference of Bar Examiners v. Multistate Legal Studies, Inc.,* 692 F.2d 478, 487 (7th Cir.1982), *cert. denied sub nom, Multistate Legal Studies, Inc. v. Ladd,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983);

*see also* 2 M. Nimmer & D. Nimmer, *Nimmer on Copyright,* § 7.17[A] at 7–178.5 (1993). No matter what is deposited with the Copyright Office, a work must be claimed before it can be considered registered.

## CONCLUSION

For the foregoing reasons, plaintiffs' copyright claim is DISMISSED. The Court declines to exercise pendant jurisdiction over the remaining state law claims; they are also DISMISSED. 28 U.S.C. § 1367(c)(3) The Clerk of the Court shall close the file.

SO ORDERED.