**U–NEEK, INC., Plaintiff,**

v.

**WAL–MART STORES, INC., Stepping
Stones Sportswear, Inc., a/k/a Step-
ping Stones, Inc., Defendants.**

**No. 99 Civ. 1583(RMB).**

United States District Court,
S.D. New York.

June 7, 2001.

162

Robert B. Golden, Lackenbach Siegel, P.C., Scarsdale, NY, for plaintiff.

Robert G. Sugarman, Robert S. Berezin, Weil Gotshal & Manges, New York City for Wal-Mart Stores, Inc.

Richard S. Mandora, Amster, Rothstein & Ebenstein, New York City, Marcus A. Manos, Nexsen, Pruett, Jacobs & Pollard, LLP, Columbia, SC, for House of Perfection, Inc.

## DECISION & ORDER

BERMAN, District Judge.

Plaintiff U–Neek, Inc. ("Plaintiff" or "U–Neek") filed this action against defendants Wal–Mart Stores, Inc. ("Wal–Mart") and Stepping Stones Sportswear, Inc. ("Stepping Stones")[1] asserting claims of

---

1. Plaintiff filed its Complaint on March 2, 1999, and an Amended Complaint on July 29, 1999. The Amended Complaint (incorrectly) names Stepping Stones as a second defendant. Stepping Stones is a trade name, trademark, and line of products used by House of

copyright and trade dress infringement, false designation of origin, false descriptions, unfair competition, dilution, deceptive trade practices, and intent to deceive, under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act"), Section 43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(a), and statutes of the State of New York and the common law. Plaintiff seeks injunctive relief, lost profits, damages, costs, and attorney's fees. Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") dismissing U–Neek's claims. **For the reasons stated below, Defendants' motion is granted in part and denied in part. The parties are directed forthwith to prepare for trial.**

## I. Background

Plaintiff is engaged in the business of designing, manufacturing, distributing, advertising, offering for sale, and/or selling children's clothing and other products. (Amended Complaint ("Am.Cmplt.") ¶ 9). U–Neek uses a "whimsical" marketing theme for its girls clothing. (Plaintiff's Statement of Material Facts ("Pl.SOMF") ¶ 4). Defendant Wal–Mart owns and operates retail stores throughout the United States. (Am.Cmplt.¶ 7). Defendant HOP is a designer and manufacturer of apparel, including children's clothing. (Defendants' Statement of Material Facts ("Def.SOMF") ¶ 2).

In 1995 and 1996, U–Neek created five new whimsical designs (the "Zing Designs") which include copyrighted designs

titled: "Butterfly with Jewel," "You're My Sunshine," "Sunflower with Jewels," "Cow Girls," and "Fish with Jewels." (Def. SOMF ¶ 11). These five titles have been labeled "Artwork on Clothing" (under the heading "Nature of Work") on the certificate of registration with the Copyright Office of the United States (the "Copyright Office"). The Zing Design garments are girls dresses with patches placed on the lower left corner of the garments. (*Id.* ¶ 10). In addition to the artwork that appears on the patches, the garments themselves contain screen printed geometric symbols and shapes (*i.e.,* stripes, circles and cow patches), that, except for the cow patch design (titled "Cow"), are not separately registered with the Copyright Office. (*Id.* ¶¶ 9, 11).[2]

In late 1997 and 1998, U–Neek developed the "Vignette Designs," each of which was different and employed themes that were common to the children's clothing industry. (SOMF ¶ 12). The Vignette Designs use screen printing, puff printing, sponge printing, and contain appliques, sequins, jewels, glitter, and embroidery as part of the designs. (Pl. SOMF ¶ 14). As of September 2000, four of the six Vignette Designs had been registered with the Copyright Office. (Def. SOMF ¶ 13). They are titled: "Dalmation Vignette," "Dogs With Presents Vignette," "Skating Bears Vignette," and "Christmas Bears Vignette." (Declaration of Robert G. Sugarman dated September 14, 2000 ("Sugarman Decl."), Ex. 9).

U–Neek began selling goods to Wal–Mart in approximately 1993. (Pl. Opp. at

---

Perfection, Inc. ("HOP"). (HOP Answer ("HOP Ans.") ¶ 8). For the purposes of this motion, Wal–Mart and HOP, together, will be referred to as "Defendants."

2. "Cow Girls" is used in connection with the separately copyrighted black-and-white cow patterned background fabric design titled

"Cow." Thus, while there are six copyrights at issue, there are only five U–Neek Zing Designs at issue. (Plaintiff's Opposition to Defendants' Memorandum in Support of its Motion for Summary Judgment ("Pl.Opp.") at 6).

5). U–Neek designed its clothing in its New York offices and contracted to have goods manufactured by overseas factories, one of which was RK Garments a/k/a Basicline ("RK") in the Philippines. (*See* Declaration of Andrew Cagan dated Nov. 16, 2000 ("Cagan Decl.") ¶ 17). U–Neek contends that, in or about 1997, its business with Wal–Mart began to decline. (*Id.* at ¶ 22). "For reasons which only later became apparent, Wal–Mart declined to purchase the styles from U–Neek." (Am. Cmplt.¶ 14). U–Neek alleges that, rather than buying the garments from U–Neek, Wal–Mart arranged a meeting in the Philippines with RK, and at that meeting Wal–Mart "instructed RK to manufacture directly for Wal–Mart goods which are substantially and confusingly similar to the Zing Designs." (Pl. Opp. at 7). **Wal–Mart contends that the patches on the Philippines designs are not substantially similar to the patches on the Zing Designs.** (Def. SOMF ¶ 26).

U–Neek also contends that a former U–Neek employee, who took a position with HOP, used the same (U–Neek) screen printer at HOP to produce garments that infringe the Vignette Design. (Pl. Opp. at 9). U–Neek further contends that HOP then sold these infringing garments (the "HOP Designs") to Wal–Mart. (*Id.*). **Wal–Mart maintains that the HOP Designs are legally dissimilar to the Vignette Designs.** (Def. SOMF ¶ 27).

As noted, Plaintiff asserts claims against Defendants for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, trade dress infringement, false designation of origin, false description and unfair competition under Section 43(a) the Lanham Act, 15 U.S.C. § 1125(a), dilution under New York General Business Law ("NYGBL") § 368d (the "New York Anti-Dilution Statute"), deceptive trade under NYGBL §§ 349 and 133, and tortious in-

terference, infringement, and unfair competition under New York common law. (Am.Cmplt.¶¶ 30, 49, 55–57, 59–61). Defendants' instant motion seeks summary judgment as to each of Plaintiff's claims.

## II. Standard of Review

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir. 1994).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party

to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

## III. Analysis

### A. Copyright Infringement

■ To establish copyright infringement under Federal law, a plaintiff (with a valid copyright) must demonstrate that: "(1) defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir.1995); *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 122–23 (2d Cir.1994).

■■ Actual copying must be shown, either by direct evidence or by indirect evidence. *See Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir.1992). The latter "includ[es] access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony." *Id.* It is only after actual copying is established that one claiming infringement is required to show substantial similarity between the two works. *Id.* In most cases, the test for substantial similarity is the "ordinary observer" test, which requires a determination of whether the average lay observer would find that the defendant misappropriated the copyrighted work. *See Knitwaves*, 71 F.3d at 1002. However, when a work contains both protectible and unprotectible elements, a court applies a "more discerning" test and attempts to eliminate the unprotectible elements from consideration, leaving only the protectible elements to be compared. *Id.*

### 1. Zing Design

Preliminarily, Defendants dispute the ownership and validity of the Zing copyrights, and contend that "U–Neek's copyright claim ... is ... limited ... to the screen printed cow patches and sewn-on patches," because "in all but one instance the copyright claimed is in the sewn-on patches [only]." [3] (Defendants' Memorandum in Support of its Motion for Summary Judgment ("Def.Mem.") at 9). Defendants further assert that U–Neek registered the five sewn-on patches as "artwork on clothing" and, therefore, any copyright protection is limited to the artwork on the patch itself.[4] Defendants contend that only in

---

[3]. The "one instance" Defendant refers to is Plaintiff's "Cow" design which appears as the black-and-white cow patterned background on the garment fabric (as compared to the patches that are sewn onto the garment).

[4]. Defendants cite *Jefferson Airplane v. Berkeley Sys., Inc.*, 886 F.Supp. 713, 717 (N.D.Cal. 1994) for the proposition that registration of part of a work cannot be expanded to include the whole work merely because the whole work is deposited in the Copyright Office. In *Jefferson Airplane*, the plaintiff's Copyright Office registration form described the nature of its work as "music," but its deposit contained both music (a record album) and artwork (an album cover). However, in that case the Copyright Office "ma[d]e clear that separate registrations are required" for sound recordings and artworks, *i.e.* plaintiff's single registration could not protect the entire deposit. Here, unlike *Jefferson Airplane*, both the patch design and the elements and symbols on the garment are works of the same nature, and therefore do not fall into separate categories for purposes of registration. *See* Sugarman Decl., Ex. 6 (showing that both "Cow Girls" design and "Cow" design call for Copyright

168

the case of the cow patches, in which U–Neek registered the work as "fabric design," could copyright protection be broader than the patch itself. (Def. Reply at 2).

Plaintiff counters that "the Zing Design registrations protect not only the designs on the patches, but the 'selection, coordination and arrangements' of all of the elements of the clothing," (Pl. Opp. at 10); the nature of the copyrighted work includes the words "on clothing" and is not limited to "artwork." (*Id.* at 11).

■■ The Copyright Act makes a certificate of registration from the Copyright Office *prima facie* evidence of the valid ownership of a copyright, *see* 17 U.S.C. § 410(c), though that presumption may be rebutted, *see Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985). Copyright protection extends only to those aspects of a registrant's work that are original to the "author" of the work. *See Yurman Design, Inc. v. PAJ, Inc.*, 93 F.Supp.2d 449, 456 (S.D.N.Y.2000). The Court finds that Defendants have failed, on summary judgment, to rebut the presumption of validity with evidence that the coordination and arrangement of the symbols on the garment are not Plaintiff's original work. *See Queenie, Ltd. v. Hot Stuff, Inc.*, 102 F.Supp.2d 512, 514 (S.D.N.Y.2000) (summary judgment denied where a trier of fact could find that plaintiff's "arrangement of rips and boxes is [original and] copyrightable"). In addition, with respect to the intended scope of registration for Plaintiff's designs, *i.e.* the meaning of "artwork on clothing," a material question of fact exists. *See Holtzbrinck Publ'g Holdings v. Vyne Communications, Inc.*, 97 Civ. 1082(KTD), 2000 WL 502860, at *9 (S.D.N.Y. Apr. 26, 2000) (denying summary judgment where issues of plaintiff's intent in registering its works remained unresolved).

■ Neither Plaintiff nor Defendants directly address(es) the issue of actual copying in their summary judgment submissions. However, Plaintiff has submitted evidence showing that Defendants had access to Plaintiff's designs. (*See, e.g.,* Golden Decl., Ex. 4 (testimony of Nancy Wade, a Wal–Mart buyer, that Wade had seen a physical sample of a Zing Design during a meeting with RK in the Philippines); SOMF ¶ 15 (establishing that the Zing Designs were advertised two to three times during 1996 to 1997 and the Vignette Designs were advertised (at most) two times per season during 1998 to 2000)). Moreover, as discussed below, there are clear similarities between Plaintiff's and Defendants' works which the Court finds probative of copying. *See Laureyssens*, 964 F.2d at 140 (similarities in the shapes of plaintiff's and defendant's works that are probative of copying raise a question of actual copying). Accordingly, a question of material fact exists as to whether Defendants actually copied Plaintiff's work.

■ Nor do Defendants sustain their burden on summary judgment of establishing the absence of substantial similarity. Defendants contend that the proper test for comparison is the "more discerning" inquiry, outlined in *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759 (2d Cir.1991), because U–Neek's works contain protectible and unprotectible elements. (Def. Mem. at 13–14). Plaintiff alleges that Defendants' reliance on *Folio Impressions* is "misplaced, and [that Defendants'] argument misconstrues the nature of the inquiry into substantial similarity." (Pl. Opp. at 15). Plaintiff urges that the traditional test for substantial similarity be employed, *i.e.*, whether

Office "Certificate of Registration Form VA," entitled "For a Work of the Visual Arts").

"the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960) (Hand, J.).

■ As the U.S. Court of Appeals for the Second Circuit recently made clear, "whether we employ the traditional 'ordinary observer' test or the *Folio Impressions* 'more discerning' inquiry—we examine the works' 'total concept and feel.'" *Knitwaves*, 71 F.3d at 1003 (quoting *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir.1982)). Moreover, what is protectible is the way the artist has "selected, coordinated, and arranged" the elements of the work. *Id.* at 1004. Here, Defendants have chosen to feature the same symbols (and animals) that U–Neek has used, *i.e.*, sunflowers, cows, fish, and butterflies, and Defendants' have employed them in a similar manner as U–Neek (*i.e.*, as patches stitched to the lower left corner of a dress) and on similar backgrounds (dresses with half-striped and half-solid color schemes). The selection, coordination, and arrangement of Defendants' symbols appear to bear strong resemblance to U–Neek's designs. The Court, therefore, cannot conclude that no reasonable jury could find the designs are substantially similar. *See Davidov v. Tapemeasure Enterprises, Inc.*, 92 Civ. 5807(LJF), 1993 WL 88234, at *4 (S.D.N.Y. Mar. 24, 1993) (summary judgment for defendant inappropriate where court could not conclude that defendant's fabric is not substantially similar to plaintiff's).

### 2. Vignette Design

■ The Copyright Act states in part, "no action for infringement ... shall be instituted until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Defendants contend that U–Neek has not met the registration requirement for two of the vignettes (precluding Defendants' from owning a valid copyright in these vignettes).[5] (Def. Mem. at 10). U–Neek urges that the (jurisdictional) requirement may be (and has been) met by the filing of an application for registration. (Pl. Opp. at 12). U–Neek also contends that dismissing its causes of action with respect to "Cats in Wreaths Vignette" and "Cats Under Tree Vignette" is premature as the claims are pending. (It "would waste judicial and the parties' resources because the claims will be re-filed as soon as the registration issues.") (Pl. Opp. at 12).

■ As noted, Plaintiff has applied for and received copyright registration for four of the six Vignette Designs but has not received registration on two vignettes. It is well settled that the court lacks subject matter jurisdiction unless the claimant has a registration or its registration has been denied. *See, e.g., Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 453 (2d Cir.1989) (stating registration is prerequisite to copyright infringement claim); *Tuff–N–Rumble v. Sugarhill Music Publ'g Inc.*, 49 F.Supp.2d 673, 677 (S.D.N.Y.1999) ("[D]istrict courts are without subject matter jurisdiction to hear claims for federal copyright infringement unless a party asserts in his pleadings that he has received an actual certificate of registration or its denial from the Copyright Office."). *Lennon v. Seaman*, 84 F.Supp.2d 522 (S.D.N.Y.2000), notwithstanding:

First, th[e] [*Lennon v. Seaman*] statement is not controlling on this Court's decision. Second, rather than relying

---

**5.** The two Vignette Designs at issue are "Cats in Wreaths Vignette" and "Cats Under Tree Vignette." (*See* Sugarman Decl., Exh. 9; Am. Cmplt. ¶ 12).

on case law within this Circuit for support, the statement cites only a copyright treatise.... Third, in a subsequent decision in the same case, the cases cited by the court do not support the proposition that the filing of an application meets the jurisdictional requirement.... The statute and Second Circuit precedent explicitly require registration as a prerequisite to an infringement claim. Plaintiff has not alleged ownership, *i.e.*, registration, of the copyright, therefore it has not met the jurisdictional requirements for a copyright claim. Its claim for copyright infringement must be dismissed.

*City Merchandise, Inc. v. Kings Overseas Corp.*, 99 Civ. 10456(RCC), 2001 WL 286724, at *3 (S.D.N.Y. Mar. 23, 2001). The Court, therefore, grants Defendants' motion for summary judgment with respect to "Cats in Wreaths Vignette" and "Cats Under Tree Vignette."

■ As to the four remaining Vignette Designs at issue, Defendants argue that Plaintiff's copyright claim should be dismissed because U–Neek is not entitled to protection for "ordinary cats, dogs and teddy bears commonly used for decoration on children's clothing." (Def. Mem. at 12). U–Neek, asserting its status as the owner of the copyright registrations, contends that ownership constitutes *prima facie* evidence of validity and that Defendants do not overcome their burden of invalidating the registration. (Pl. Opp. at 13); *see* 17 U.S.C. § 410; *Folio Impressions*, 937 F.2d at 763. The Court agrees with Plaintiff. There is a material fact issue as to ownership. *See Queenie*, 102 F.Supp.2d at 514.

As in the case of the Zing Designs, the Court also finds that Defendants have failed to demonstrate, as a matter of law, that they did not "actually copy" Plaintiff's Vignette Designs. *See Laureyssens*, 964 F.2d at 140. Nor have Defendants established lack of substantial similarity. The colors and fabrics used in Defendants' designs, as well as the designs themselves, are not so different in "total concept and feel" for the Court to conclude, on summary judgment, that the designs are substantially different. *Knitwaves*, 71 F.3d at 1004.

### 3. Attorney's Fees

■ Defendants also contend that U–Neek cannot recover attorney's fees under the Copyright Act, 17 U.S.C. § 412. (Def. Mem. at 15–16). Defendants assert that U–Neek's remedies are limited with respect to both the Zing Designs and Vignette Designs because, following the alleged infringing activity, U–Neek failed to register its works with the Copyright Office within three months of their initial publication. *See* 17 U.S.C. § 412(2);[6] *see also On Davis v. Gap, Inc.*, 246 F.3d 152, 158 (2d Cir.2001). Plaintiff does not appear to address this issue in its opposition papers.

The alleged infringement of U–Neek's Zing Designs occurred in mid–1997 (Def. SOMF ¶ 25), which was (more than three months) after the first publication of the designs on May 1, 1996 (Sugarman Decl., Ex. 6), but before registration of the copyrights on July 31, 1998 (Sugarman Decl., Ex. 6). U–Neek is, therefore, not eligible for attorney's fees. 17 U.S.C. § 412.

---

**6.** 17 U.S.C. § 412 specifies that a copyright holder is not entitled to elect statutory damages or receive attorney's fees under §§ 504 and 505 if "(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."

Similarly, because the allegedly infringing use of U–Neek's Vignette Designs occurred in 1998 (Sugarman Decl., Ex. 20), *i.e.*, more than three months after the first publication of the designs on March 1, 1997 (Sugarman Decl., Ex. 9), but before registration of the copyrights on Sept. 21, 1998 (Sugarman Decl., Ex. 9), U–Neek is not eligible for attorney's fees.[7]

## B. Trade Dress

Section 43(a) of the Lanham Act provides a private cause of action against any person who, "in connection with any goods ... or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, ... which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods ... by another person...." 15 U.S.C. § 1125(a). The protection against unregistered trademark infringement extends to what is called "trade dress." *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) ("§ 43(a) provides no basis for distinguishing between trademark and trade dress."). The concept of trade dress encompasses the design and appearance of the product together with all the elements that serve to identify the product to the consumer. *See Jeffrey Milstein, Inc. v. Greger, Law-*

*lor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995). It includes a product's "overall composition and design, including size, shape, color, texture and graphics." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir.1991).

Under the U.S. Supreme Court's recent decision in *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 214–15, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000),[8] to establish a claim of product trade dress infringement under § 43(a) a plaintiff must show that "(1) the trade dress has acquired a secondary meaning in the marketplace, and (2) there is a likelihood of confusion of the allegedly infringed and infringing products." *Eastern America Trio Prods., Inc. v. Tang Elec. Corp.*, 97 F.Supp.2d 395, 414 (S.D.N.Y.2000). Functional product design is not protected under § 43(a) of the Lanham Act, and "functionality" may be raised as a defense to a trade dress infringement action. *See Forschner Group, Inc. v. Arrow Trading Co.*, 124 F.3d 402, 407 (2d Cir.1997).

### 1. Secondary meaning

A product design has acquired secondary meaning if, "in the minds of the public, the primary significance of a product feature ... is to identify the source of the product rather than the product itself."

---

7. The certificate of registration for the "DOGS w/PRESENTS VIGNETTE" design indicates that this particular work was first published on March 1, 1998 (one year *after* the initial publishing date of the other vignettes). The effective date of registration for this design is September 21, 1998. (Sugarman Decl., Ex. 9). Defendants' alleged infringing use occurred "in 1998." (SOMF ¶ 28). Upon the existing record, the Court cannot ascertain whether the alleged infringement occurred before or after the first publication of this design. In either case, Plaintiff is ineligible for statutory damages or attorney's fees. If the alleged infringement oc-

curred before the initial publication, Plaintiff is barred from recovery by §. 412(1) because the infringement would have also occurred before registration; if it occurred after the initial publication, Plaintiff is barred from recovery by § 412(2) because it did not register the copyright within the three month grace period.

8. *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000) is unrelated to the instant action.

*Two Pesos,* 505 U.S. at 766, n. 4, 112 S.Ct. 2753. The U.S. Court of Appeals for the Second Circuit considers several factors when determining secondary meaning, including: "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) unsolicited media coverage of the product; (4) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use." *Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1222 (2d Cir.1987).

Plaintiff claims that both its Zing and Vignette Designs are protectible trade dress and that Defendants are infringing its rights in violation of Section 43(a) of the Lanham Act. Defendants respond that Plaintiff does not have protectible trade dress rights in its clothing designs. (Def. Mem. at 16–20). Defendants contend that Plaintiff has failed to raise a genuine issue of material fact as to the alleged secondary meaning of Plaintiff's designs, (Def. Mem. at 16–22), and that Plaintiff cannot prove that a likelihood of confusion exists between the parties' designs. (Def. Mem. at 23–26).

Acknowledging that proof of secondary meaning entails "vigorous evidentiary requirements," *Coach Leatherware,* 933 F.2d at 169, the Court finds, here, that an issue of material fact exists. *Id.* at 169 ("The careful weighing of evidence necessary to determining secondary meaning renders it an unlikely candidate for summary judgment"); *Travel Magazine, Inc. v. Travel Digest, Inc.,* 191 F.Supp. 830, 833 (S.D.N.Y.1961) ("whether a mark or title has acquired secondary meaning is always a substantial question of fact"). U–Neek has submitted evidence (by affidavit) that (two) buyers in the children's clothing industry believed that "the Zing look was unique and distinctive in the industry, that the look was used consistently by U–Neek

over an extended period of time, and that based on the distinctiveness and length of use, they could identify U–Neek as the source of clothing based on the appearance or look of the clothing." (Pl. Opp. at 19). In addition, U–Neek has submitted evidence of: advertisements of Zing Designs through circulars and flyers between 1996 and 1998 (SOMF ¶ 15); the sales quantity (and value of sales) of the Zing Designs from 1996 to 1998 and of the Vignette Designs from 1997 to 2000 (Declaration of Robert B. Golden dated November 14, 2000 ("Golden Decl."), Ex. 2); exclusivity of sales of the Zing and Vignette designs (Golden Decl., Ex. 1); and, purported infringement of the Zing Design by Defendants (Golden Decl., Ex. 5). This is sufficient to preclude summary judgment. *See, e.g., Penguin Books USA v. New Christian Church of Full Endeavor, Ltd.,* 96 Civ. 4126(RWS), 2000 WL 1028634, at *21 (S.D.N.Y. July 25, 2000) (denying summary judgment where the "evidence [submitted] is not sufficient in and of itself to establish secondary meaning, [but] does establish an issue of material fact.").

### 2. Likelihood of Confusion

"Likelihood of confusion" entails an analysis of multiple (eight) factors. *See Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492 (2d Cir.1961). The *"Polaroid-*factors" include: (1) the strength of the plaintiff's trade dress; (2) the similarity between the two trade dress; (3) the proximity of the products in the marketplace; (4) the likelihood that the prior owner will "bridge the gap" between the products; (5) evidence of actual confusion; (6) the defendant's bad faith; (7) the quality of defendant's product; and (8) the sophistication of the relevant consumer group. *See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 1002–03 (2d Cir.1997); *Best Cellars Inc. v.*

*Grape Finds at Dupont, Inc.,* 90 F.Supp.2d 431, 453–54 (S.D.N.Y.2000). Summary judgment based on likelihood of confusion under the *Polaroid* analysis "is appropriate where 'the undisputed evidence would lead only to one conclusion.'" *The Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d Cir. 1996) (quoting *Cadbury Beverages, Inc. v. Cott Corp.,* 73 F.3d 474, 478 (2d Cir.1996)). That is not this case. "If a factual inference must be drawn to arrive at a particular finding on a *Polaroid* factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment." *Cadbury Beverages,* 73 F.3d at 478. "The bottom line on a motion for summary judgment is not how many factors favor each side but whether a reasonable trier of fact might differ as to likelihood of confusion." *Physicians Formula Cosmetics Inc. v. West Cabot Cosmetics, Inc.,* 857 F.2d 80, 85 (2d Cir.1988).

Defendants contend that application of the eight *Polaroid* factors to this case "compels a determination that there is no likelihood of confusion among and between the designs" because "an ordinarily prudent person would not be confused as to the source of the goods in question." (Def. Mem. at 24). Plaintiff disagrees, stating that many of the *Polaroid* factors weigh in its favor, including, similarity between Plaintiff's and Defendants' trade dress, similarity between the channels of distribution of the goods, consumer confusion, and Defendants' bad faith. (Pl.Opp.21–22).

Several issues of fact present here preclude summary judgment. First, as set forth *supra* in part III(B)(1), the distinctiveness of U–Neek's trade dress is unresolved. Second, the degree of similarity

between U–Neek's trade dress and the overall appearance of Defendants' designs is disputed. Also, the products are nearly identical and compete in the same market, thus supporting a finding of a likelihood of confusion. *See Paddington Corp. v. Attiki Importers & Distribs., Inc.,* 996 F.2d 577, 586 (2d Cir.1993). Finally, the Defendants' good faith in developing their designs needs to be (further) explored. Thus, the Court is unable to determine likelihood of confusion as a matter of law.[9]

### 3. Functionality

Defendants contend that a finding that Plaintiff's designs are protectible under the Lanham Act "would permit [U–Neek] to corner the market on *all* designs that feature commonly used whimsical design elements ... or puppies, kittens or teddy bears, even if such designs are not substantially similar." (Def. Mem. at 19). Defendants further assert that the designs on U–Neek's garments are "functional" because their primary purpose is aesthetic rather than source-identifying. (*Id.*).

> In deciding the question of functionality at trial, the factfinder will be faced with answering the following: Are consumers likely to purchase a LeSportsac bag rather than that of a competitor principally because they find LeSportsac's particular combination of design features aesthetically pleasing, or will they buy principally because the product features serve to identify or distinguish the goods as genuine LeSportsac products? .... If the latter, the LeSportsac "look" primarily serves a legitimate trademark purpose—identifying the source of the product—and should be eligible for protection....

---

9. The Court is not passing judgment on *Polaroid* factors not specifically addressed herein nor upon the ultimate merits of the case. A trial is necessary to assess and weigh each factor and establish, among other things, whether there exists a likelihood of confusion.

*LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 78 (2d Cir.1985). Plaintiff counters that the designs are non-functional, and that buyers in the industry identify U–Neek as the source of clothing based on the appearance or look of the clothing. (Pl. Opp. at 19).

█ "A product feature is functional [and, therefore, non-protectible] if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Knitwaves*, 71 F.3d at 1006 (internal quotations omitted). The Court does not agree, at the summary judgment stage, that protecting U–Neek's designs would necessarily permit U–Neek to "corner the market" and thus restrict Defendants' ability to compete. Affording protection to U–Neek's designs would not, as Defendants contend, prohibit Defendants from using all designs that feature "puppies, kittens or teddy bears." (Def. Mem. at 19). Moreover, as the Court has already found there is an issue of material fact with respect to secondary meaning, *see supra* part III(B)(1), the Court does not conclude, at this stage, that the primary purpose of U–Neek's designs is aesthetic rather than source-identifying.

## C. State Law Claims

### 1. Preemption

 Defendants contend that the Copyright Act preempts Plaintiff's state law claims. (Def. Mem. at 25). The Copyright Act preempts state laws that protect "legal or equitable rights that are the equivalent to any of the exclusive rights within the general scope of copyright as specified" in the Federal statute. 17 U.S.C. § 301(a). The Second Circuit recently applied the so-called "extra element" test in this context:

> [I]f an "extra element" is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption.

*Samara Bros., Inc. v. Wal–Mart Stores, Inc.*, 165 F.3d 120, 130 (2d Cir.), *rev'd on other grounds*, 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000) (internal citations omitted). *Samara Bros.* held that the Copyright Act did not preempt either the New York common law claim of unfair competition or the New York General Business Law ("NYGBL") § 349 claim asserted by plaintiff, as both claims in *Samara Bros.* required an "extra element." *Id.* at 132. Specifically, the Court found "actual confusion" to be the extra element necessary to prove common law unfair competition and "intentional deception" to be the extra element required for plaintiff's NYGBL § 349 claim. Based upon these authorities, the Court here finds that Plaintiff's state law claims are not preempted.[10]

10. Plaintiff's (three) remaining state law claims are similarly not preempted. The Second Circuit has held that the Federal intellectual property laws do not preempt the New York anti-dilution laws. *See Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 96 (2d Cir.1993). The tortious interference claim(s), as discussed below, involve the extra element of Defendants' alleged bad faith "intent" in entering into contractual and business relations with a third party. Similarly, the common law (trade dress) infringement claims are not preempted because violation of the state law requires evidence of acts other than those protected by copyright. *See Harper & Row, Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 200 (2d Cir.), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

## 2. Dilution

The New York Anti–Dilution Statute states:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

NYGBL § 360–i (formerly § 368d). A party asserting this claim must prove (1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of "blurring" or "tarnishment." *See Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42 (2d Cir.1994). Blurring occurs when "[c]ustomers or prospective customers . . . see the plaintiff's mark used on a plethora of different goods and services." 3 *McCarthy on Trademarks and Unfair Competition* § 24.13[1][a][i] at 24–106. "Thus, dilution by 'blurring' may occur where the defendant uses or modifies the plaintiff's trademark to identify the defendants's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir.1994) (emphasis omitted). Tarnishment occurs when a trademark is "linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context," with the result that "the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." *Id.*

The Court has already determined that an issue of fact exists as to whether U–Neek's Zing and Vignette Designs have acquired secondary meaning in the marketplace, *see* discussion *supra* at part III(B)(1).

With respect to dilution, Plaintiff's acknowledge that Defendants manufacture a product similar in quality to Plaintiff's product. *See* Pl. Opp. at 22 (failing to dispute contention that Defendants' goods are not of a lesser quality and asserting that "products of a similar quality are actually more susceptible to confusion"). The Court finds no indication that Plaintiff's mark is tarnished by any affirmative associations that Defendants' mark conveys. Accordingly, the relevant inquiry is whether Defendants' mark blurs U–Neek's product identification. U–Neek contends that Defendant's use of the mark is likely to blur the distinctive quality of Plaintiff's mark. (Am. Cmplt. ¶ 55 ("the public will likely associate Defendants' . . . infringing goods with Plaintiff's . . . goods, and cause dilution of the distinctive quality of Plaintiff's Trade Dress.")) Defendants claim, however, that no blurring can occur because "the defendants and U–Neek [both] sold girls' clothing." (Def. Mem. at 26). In light of these contentions, the Court finds that the question of whether Defendants' use of the mark is likely to dilute the distinctive quality of U–Neek's mark (by blurring) is an issue of fact. *See Jordache Enterprises, Inc. v. Levi Strauss & Co.*, 841 F.Supp. 506, 523 (S.D.N.Y.1993); *see also Diversified Marketing, Inc. v. Estee Lauder, Inc.*, 705 F.Supp. 128, 134 (S.D.N.Y.1988) (holding that the likelihood that plaintiff's use of defendant's name will whittle down the distinctive identity of defendant's name is a fact issue to be determined at trial).

## 3. Deceptive Trade

Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business." NYGBL § 349. To prevail un-

der § 349 of the NYGBL, a plaintiff must show that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir.2000). In addition, the "gravamen of the complaint must be consumer injury or harm to the public interest." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir.1995).

Plaintiff asserts that Defendants' acts of copying Plaintiff's trademarked designs constitute "willful, deceptive acts and practices in the conduct of business, trade and/or commerce" and that such acts "were calculated and designed intentionally to mislead and deceive the public." (Am.Cmplt.¶¶ 56–57). Defendants counter that "[t]rademark and trade dress claims fall outside the scope of § 349," because, there is no public harm or direct harm to consumers in trademark infringement actions. (Def. Mem. at 27 (citing *Something Old, Something New, Inc. v. QVC, Inc.*, 98 Civ. 7450(SAS), 1999 WL 1125063, at *12 (S.D.N.Y. Dec. 8, 1999))).

■ Section 349 is a consumer protection statute which, until 1980 when it was amended to allow a private right of action, was enforceable only by the State Attorney General. *See Horn's, Inc. v. Sanofi Beaute, Inc.*, 963 F.Supp. 318, 328 (S.D.N.Y.1997). A competitor's right of action under § 349, however, is limited. Defendants (correctly) assert that trade dress claims fall outside the statute. "Since trademark or trade dress infringement claims ... fall outside the original intent of §§ 349 and 350 ... federal courts have determined that the provisions require the sort of offense to the public interest which would trigger FTC intervention under 15 U.S.C.A. § 45." *Id.* (citing *Genesco Entertainment, a Div. of Lymutt Indus. v. Koch*, 593 F.Supp. 743, 749–50 (S.D.N.Y. 1984)); *see also Something Old*, 1999 WL 1125063, at *11.[11]

■ Plaintiff also alleges that Defendants engaged in deceptive trade practices in violation NYGBL § 133, for which it is entitled to injunctive relief. Section 133 "protects tradenames from unlawful infringement by prohibiting the use of someone else's name, style or symbol as part of one's own name with an intent to deceive the public." *Sovereign Bus. Forms, Inc. v. Stenrite Indus., Inc.*, 00 Civ. 3867(BDP), 2000 WL 1772599, at *12 (S.D.N.Y. Nov. 28, 2000). To establish a claim under § 133 Plaintiff must show that Defendants used its name or symbol as part of Defendants' "corporate, assumed or trade name" for purposes of advertising with an intent to deceive. *Oliveira v. Frito–Lay, Inc.*, 96 Civ. 9289, 1997 WL 324042 (S.D.N.Y. June 13, 1997). Plaintiff has not offered proof that Defendants are, in fact, assuming, adopting, or using Plaintiff's name to deceive or mislead the public. *See Judith Ripka Designs, Ltd. v. Preville*, 935 F.Supp. 237, 260 (S.D.N.Y.1996) (dismissing plaintiff's NYGBL § 133 claim).

### 4. Tortious Interference

■ U–Neek asserts that Defendants tortiously interfered with U–Neek's "actual and potential business relations and contracts," (Am.Cmplt.¶ 61) by "enter[ing] into agreements with RK for the manufacture of illegal, infringing goods." (Pl. Opp. at 25). Plaintiff cites testimony of Nancy

---

11. Plaintiff has not offered any proof to show that the public was materially misled or deceived in the way contemplated by § 349. *See Something Old*, 1999 WL 1125063, at *12 (dismissing plaintiff's § 349 claim). Similarly, Plaintiff has not submitted evidence that Defendants engaged in an act or practice that is deceptive or misleading in a material respect. *See Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 697 (2d Cir.1994).

Wade, a Wal–Mart buyer, who acknowledges that, while at RK for a business meeting, she observed sample garments contained Zing labels. (Golden Decl., Ex. 4 at 97). Wade also testified that she was aware that RK was a manufacturer that Zing had used. (Golden Decl., Ex. 4 at 11). Defendants assert that "U–Neek's President could not identify a single agreement or business relationship interfered with by the defendants." [12] (Def. Mem. at 29).

██ Under New York Law, the elements of a tortious interference claim are: "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir.2001). Defendants have failed to demonstrate that no reasonable juror could find that Plaintiff should prevail on this claim. Plaintiff submitted evidence that: Defendants knew that RK and U–Neek had an agreement (Goldman Decl., Ex. 4); with such knowledge, Defendants subsequently entered into an agreement with RK for the manufacture of certain clothing designs; there was a decline in total sales by U–Neek to Wal–Mart over the relevant time period (Cagan Decl. ¶ 22). Whether Defendants intentionally "procured the breach of the contract" is a question of fact for a jury to decide.

██ "Under New York law, the elements of a claim for tortious interference with prospective business relations are: (1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship." *Nadel v. Play–By–Play Toys & Novelties, Inc.*, 208 F.3d 368, 382–83 (2d Cir.2000) (emphasis added). A claim of tortious interference with prospective business relations "must meet requirements more demanding than those for interference with [the] performance of an existing contract." *Shepard Indus., Inc. v. 135 E. 57th St., LLC*, 97 Civ. 8447(DAB), 1999 WL 728641, at *5 (S.D.N.Y. Sept. 17, 1999). For example, if a defendant's interference is intended (at least partly) to advance its own interests, the claim will fail unless the means employed include criminal or fraudulent conduct. *See PPX Enters., Inc., v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 269 (2d Cir.1987); *see also Shepard Indus.*, 1999 WL 728641, at *5.

██ Plaintiff's claim cannot survive summary judgment. There is no evidence that Defendants' negotiations with RK were (solely) engaged in for purposes of harming U–Neek or were in some other way dishonest.

On a motion for summary judgment, the moving party must establish the absence of a genuine issue of material fact. But this requirement is not independent of the identity of the party that bears the burden of proof at trial. Where, as here, the burden of proof on an issue at trial lies with the non-moving party, it is sufficient for the moving party to point to a lack of evidence on the issue sufficient to go to the trier of fact. The non-

---

**12.** Defendants cite (apparently incorrectly) SOMF ¶ 31: "There is no evidence that the defendants' products are of a lesser quality than those produced by the plaintiff." The Court believes that Defendants intended to reference SOMF ¶ 32, deposition testimony of Andrew Cagan, which appears under the topic heading pertaining to "Tortious Interference." In either case, the Court does not find that either reference supports Defendants' assertion on summary judgment.

moving party, in order to avoid summary judgment, then must come forward with admissible evidence sufficient to raise a genuine issue for trial.

*Diamond Direct, LLC v. Star Diamond Group, Inc.,* 116 F.Supp.2d 525, 531 (S.D.N.Y.2000) (citations omitted). Although the Court must "resolv[e] ambiguities and [draw] reasonable inferences against the moving party" in assessing whether there are any factual issues to be tried, *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), the non-moving party must produce "sufficient evidence favoring [it] for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

### 5. Common Law Infringement

 As Defendants correctly acknowledge, "[a] common law trade dress infringement claim is analyzed in the same manner as a trade dress claim under the Lanham Act, including the requirements of proof of secondary meaning." (Def. Mem. at 30 (citing *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.,* 25 F.Supp.2d 154, 166 (S.D.N.Y.1998))). "Specifically, the tests for inherent distinctiveness and secondary meaning apply to both federal statutory and common law trade dress infringement claims." *Sports Traveler,* 25 F.Supp.2d at 166–67. Because the Court has already determined that genuine issues of material fact exist as to whether Defendants have infringed Plaintiff's trade dress under Federal law, *see* discussion *supra* at part III(B), summary judgment is denied on the common law infringement claim.

### 6. Unfair Competition

 In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion where equitable relief is sought. *See W.W.W. Pharm. Co. v. Gillette Co.,* 984 F.2d 567, 576 (2d Cir.1993). Additionally, there must be some showing of bad faith. *See Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980).

 Plaintiff alleges that "[d]efendants' acts of unfair competition have caused irreparable harm and damage to Plaintiff and have caused Plaintiff *monetary damage* in an amount thus far not determined, for which Plaintiff is entitled to its *actual damages, Defendants' profits, punitive damages, attorneys' fees and costs.*" (Am.Cmplt.¶ 62) (emphasis added). Plaintiff does not seek equitable relief on this claim. Therefore, the relevant inquiry is whether Plaintiff can establish actual confusion (and some showing of bad faith).[13] To show actual confusion, a plaintiff must demonstrate that the defendant's acts "could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." *Lang v. Retirement Living Publishing Co., Inc.,* 949 F.2d 576, 583 (2d Cir.1991). Plaintiff does not point to any instances of actual confusion. *See Conopco, Inc. v. Cosmair, Inc.,* 49 F.Supp.2d 242, 252 (S.D.N.Y.1999) (acknowledging that because actual confusion is difficult to prove, "courts have allowed, in addition to incidents of actual confusion among consumers, scientific surveys which test the statistical likelihood of consumer confusion to be submitted as evidence of actual con-

---

**13.** *See Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 79 (2d Cir.1981) ("Although it is necessary to prove that the buying public was actually deceived in order to recover damages under section 43(a) of the Lanham Act, only a likelihood of confusion or deception need be shown in order to obtain equitable relief.").

fusion.") (citing cases). Rather, Plaintiff asserts that it has established actual confusion because "[intentional] copying raises a presumption of a likelihood of confusion and actual confusion." (Pl. Opp. at 23). The Court does not agree. Intentional copying is neither evidence of actual confusion nor sufficient to raise a presumption of actual confusion. *See Paddington Corp.*, 996 F.2d at 586–87 (where no evidence of actual confusion existed, evidence of intentional copying relevant for purposes other than proof of actual confusion); *Charles of the Ritz Group Ltd. v. Quality King Distrib., Inc.*, 832 F.2d 1317, 1322 (2d Cir.1987) (junior user's intentional copying held (only) to raise presumption of confusing similarity, not presumption of actual confusion). Finding no evidence of actual confusion between U–Neek's goods and Defendants' goods, summary judgment is appropriate.[14]

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [37–1] is granted in part and denied in part as follows:

(i) The Court denies Defendants' motion for summary judgment with respect to Plaintiff's federal copyright infringement claim regarding the Zing Designs;

(ii) The Court denies Defendants' motion for summary judgment with respect to Plaintiff's federal copyright infringement claim regarding the four registered Vignette Designs, and grants Defendants' motion for summary judgment with respect to Plaintiff's federal copyright infringement claim regarding the two unregistered Vignette Designs;

(iii) The Court grants Defendants' motion for summary judgment with respect to Plaintiff's claim for attorney's fees for infringement of the Zing and Vignette Designs;

(iv) The Court denies Defendants' motion for summary judgment with respect to Plaintiff's federal trade dress, false designation of origin, false description and unfair competition claims;

(v) The Court denies Defendants' motion for summary judgment with respect to Plaintiff's state dilution claim;

(vi) The Court grants Defendants' motion for summary judgment with respect to Plaintiff's state deceptive trade practices claims;

(vii) The Court denies Defendants' motion for summary judgment with respect to Plaintiff's common law claim of tortious interference with contractual relations, and grants Defendants' motion for summary judgment with respect to Plaintiff's common law claim of tortious interference with potential business relations;

(viii) The Court denies Defendants' motion for summary judgment with respect to Plaintiff's common law claim of infringement; and

(ix) The Court grants Defendants' motion for summary judgment with respect to Plaintiff's common law claim of unfair competition.

The parties are directed to participate in a trial scheduling conference on July 13, 2001, at 11:30 a.m., in Courtroom 706 of the United States Courthouse, 40 Centre Street, New York, New York. **The parties are directed to engage in good faith**

---

**14.** The Court, therefore, need not reach the question of Defendants' alleged bad faith.

settlement negotiations prior to the con-ference.