**LUV N' CARE, LTD. and Admar International, Inc., Plaintiffs,**

v.

**WALGREEN CO. and Kmart Corp., Defendants.**

**No. 08 Civ. 4457(DC).**

United States District Court, S.D. New York.

March 19, 2010.

Pearl Cohen Zedek & Latzer LLP, by Morris E. Cohen, Esq., New York, NY, and Feldman Gale, P.A., by James A. Gale, Esq., Miami, FL, for Plaintiffs.

Schlam Stone & Dolan LLP, by Bennette Deacy Kramer, Esq., New York, NY, and Christopher & Weisberg, P.A., by Jason R. Buratti, Esq., Alan M. Weisberg, Esq., Jeffrey H. Kamenetsky, Esq., Garrett A. Barten, Esq., Fort Lauderdale, FL, and Wiley, Rein & Fielding LLP, by Floyd B. Chapman, Esq., Robert J. Scheffel, Esq., Washington, DC, for Defendant Walgreen Co.

## *OPINION*

CHIN, District Judge.

Plaintiffs Luv N' Care, Ltd. ("LNC") and Admar International, Inc. ("Admar") market baby products under the mark NUBY. Defendant Walgreen Co. ("Walgreens") was a retailer of plaintiffs' products. Plaintiffs allege that Walgreens sold "knock-off" copies of two of plaintiffs' "sippy cups." Plaintiffs further allege that Walgreens perpetrated a "bait and switch" scheme on LNC customers by shelving the look-a-like products next to LNC products and below signs identifying them as LNC products. Walgreens then terminated its relationship with LNC while continuing to sell the allegedly infringing sippy cups.

Plaintiffs bring the following claims against Walgreens: (1) unfair competition and trademark infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125; (2) federal trademark dilution; (3) unfair competition under New York common law; and (4) violation of New York General Business Law ("NYGBL") § 349. Plaintiffs move for summary judgment on their first, third, and fourth causes of action. Walgreens moves for summary judgment

dismissing plaintiffs' claims on the grounds that plaintiffs have not established protectable trade dress, secondary meaning, or non-functionality. For the reasons set forth below, I hold that (1) substantial issues of material fact remain as to plaintiffs' federal claims and state unfair competition claim, and (2) plaintiffs have not pled a cognizable claim under NYGBL § 349. Accordingly, plaintiffs' motion for summary judgment is denied and Walgreens's motion for summary judgment is granted only as to plaintiffs' NYGBL claim.

## BACKGROUND

### A. *Facts*

On a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. For purposes of these cross-motions for summary judgment, when considering each side's motion, I construe the facts in the light most favorable to the other party.

The following facts are drawn from the deposition transcripts, affidavits, declarations, and exhibits submitted by the parties. Certain undisputed facts are drawn from the parties' Rule 56.1 statements.

LNC is a baby product company that sells certain products under the trademark NUBY, which is owned by Admar. (Pls. Add'l 56.1 Facts ¶¶ 1–2; Def. Response to Pls. Add'l 56.1 Facts at 1; Def. Add'l 56.1 Facts ¶ 64). Walgreens was a retailer of NUBY products, including the two sippy cups at issue in this suit. (Pls. 56.1 Facts ¶ 3; Def. Response to Pls. 56.1 Facts at 2–3).

In early 2006, Walgreens invited LNC's then-president and sales representative to a meeting. (Pls. Add'l 56.1 Facts ¶ 88;

Def. Response to Pls. Add'l 56.1 Facts at 66). Plaintiffs allege that, at this meeting, Walgreens gained confidential information regarding plaintiffs' products. (Jack Hakim Decl. ¶ 33, 35–36; McQuillen Decl. ¶ 26, 30).

In April 2006, in response to escalating oil prices, plaintiffs proposed a price increase to Walgreens. (Pls. Add'l 56.1 Facts ¶ 89; Def. Response to Pls. Add'l 56.1 Facts at 67). Walgreens accepted this proposed price increase, and plaintiffs then agreed to provide Walgreens with two additional shipments of LNC sippy cups at the un-escalated price. (Jack Hakim Decl. ¶ 43; McQuillen Decl. ¶ 39 & Ex. 2).[1] As a rationale for needing the two additional shipments, Walgreens told plaintiffs that (1) it is fair business practice to allow a buyer a final opportunity to buy the product at the old price and (2) Walgreens had already planned certain advertisements for the sippy cups at the previous price. (Pls. Add'l 56.1 Facts ¶ 91; Def. Response to Pls. Add'l 56.1 Facts at 68).

On June 27, 2006, Walgreens notified plaintiffs that it had found an "alternative source" for the sippy cups that would allow Walgreens to maintain its current price points, and thus it would no longer be purchasing the relevant sippy cups from LNC. (Pls. Add'l 56.1 Facts ¶ 95; Def. Response to Pls. Add'l 56.1 Facts at 71). This alternate source was Royal King Baby Product Co. ("Royal King"), a manufacturer contracted through Walgreens's import agent. (Pls. Add'l 56.1 Facts ¶ 96; Def. Response to Pls. Add'l 56.1 Facts at 71–72). These Royal King sippy cups are sold under Walgreens's WAGI brand. (Pls. Add'l 56.1 Facts ¶ 99; Def. Response

---

**1.** Walgreens disputes that it agreed to the price increase but admits that LNC provided it with two additional shipments of cups at

the un-escalated price. (Def. Response to Pls. Add'l 56.1 Facts at 67).

to Pls. Add'l 56.1 Facts at 73). Plaintiffs allege (but Walgreens denies) that Royal King is a "known intellectual pirate" that produces look-a-likes of the LNC sippy cups. (Pls. Add'l 56.1 Facts ¶ 96; Nouri Edward Hakim Decl. ¶¶ 44, 77; Jack Hakim Decl. ¶ 46; McQuillen Decl. ¶ 46).

Plaintiffs allege that Walgreens used the additional two shipments provided by LNC to carry out a "bait and switch" scheme, whereby Walgreens commingled Royal King sippy cups with LNC sippy cups, and placed Royal King sippy cups above LNC signs. (Nouri Edward Hakim Decl. ¶¶ 57–58 & Ex. 4; Jack Hakim Decl. ¶¶ 57–61 & Ex. 1; McQuillen Decl. ¶ 58 & Ex. 7). An LNC customer testified that she was tricked into purchasing Royal King products instead of LNC products. (Nouri Edward Hakim Decl. Ex. 5 (Brandy Thomas Affidavit); Nouri Edward Hakim Supp. Decl. ¶¶ 2–4).

### B. *Procedural History*

On May 13, 2008, plaintiffs filed suit against Walgreens and Kmart Corp. ("Kmart") claiming that defendants were "using [p]laintiffs' product designs and packaging to trade off of [p]laintiffs' reputation and goodwill and to create deception in the marketplace." (Compl. ¶ 65). Plaintiffs alleged that Kmart sold infringing copies of the following LNC products and their packaging: the sports sipper cup, the gripper cup (the "soft spout cup"), the flip-it sports sipper cup, and a comb and brush set. (*Id.* ¶¶ 30–43, 49–56). Plaintiffs further alleged that Walgreens

sold infringing copies and packaging of the soft spout cup and the no-spill cup (the "hard spout cup"). (*Id.* ¶¶ 39–48; Nouri Edward Hakim Decl. ¶ 57).

On May 20, 2009, plaintiffs voluntarily dismissed all claims against Kmart with prejudice. (5/20/09 Stip.). Accordingly, only the claims against Walgreens regarding the hard and soft spout cups and their packaging remain.[2]

On June 8, 2009, the parties filed the instant cross-motions for summary judgment. Plaintiffs additionally filed a motion to amend their complaint or, in the alternative, to transfer the case. On February 4, 2009, I denied plaintiffs' motion to amend/transfer in all respects. *Luv N' Care, Ltd. v. Walgreen Co.*, No. 08 Civ. 4457(DC), 2010 WL 396094, 2010 U.S. Dist. LEXIS 11011 (S.D.N.Y. Feb. 4, 2010). I now consider the parties' motions for summary judgment.

### DISCUSSION

### A. *Summary Judgment Standard*

The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed R. Civ. P. 56(c); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment should be denied "if the evidence is such that a reasonable jury could return a ver-

---

**2.** Plaintiffs' moving papers make reference to Walgreens's sale and copying of the comb and brush set. Plaintiffs' complaint, however, only made allegations as to Kmart regarding the comb and brush set. (Compl. ¶¶ 53–56). No such allegations were made against Walgreens. Further, little, if any, of plaintiffs' evidence regarding trademark infringement and unfair practices pertains to the comb and

brush set. Moreover, plaintiffs did not request to assert any additional claims against Walgreens when they requested to amend their complaint. Instead, plaintiffs' proposed amendments sought to eliminate claims no longer at issue due to Kmart's absence. (Pls. Mem. for Leave to Amend at 6). Accordingly, I will not consider any arguments as to the comb and brush set.

dict" in favor of the non-moving party. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 178–79 (2d Cir.2008).

In deciding a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *In re "Agent Orange" Prod. Liab. Litig.,* 517 F.3d 76, 87 (2d Cir.2008). A court faced with cross-motions for summary judgment need not "grant judgment as a matter of law for one side or the other," but " 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.' " *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993) (quoting *Schwabenbauer v. Bd. of Educ. of Olean,* 667 F.2d 305, 313–14 (2d Cir.1981)).

**B.** ***Trademark Infringement Under the Lanham Act***

■ To prevail on a trademark infringement claim based on an unregistered mark, a plaintiff must prove that (1) the trade dress is distinctive as to the source of the good, (2) there is a likelihood of confusion between its good and defendant's, and (3) the trade dress is not functional. *Wal–Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 210–12, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000); *Cartier, Inc. v. Sardell Jewelry, Inc.,* 294 Fed.Appx. 615, 617 (2d Cir.2008) (noting that burden is on plaintiff to show non-functionality).

■ The standards for proving the first element, distinctiveness, differ for plaintiffs claiming infringing packaging from those claiming infringing product design:

Where the mark is ... product packaging the plaintiff may prove distinctiveness by showing either that the "in-trinsic nature" of the mark serves to identify a particular source (what is known as "inherent distinctiveness") or that "in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself" (what is known as "acquired distinctiveness" or "secondary meaning"). The product design plaintiff, however, must always make the second, more difficult showing.

*Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 115 (2d Cir.2001) (quoting *Wal–Mart Stores, Inc.,* 529 U.S. at 210–11, 213–14, 120 S.Ct. 1339) (second alteration in original).

Plaintiffs here allege trademark infringement of both their product design and product packaging. I address these claims below and conclude that disputed issues of material fact preclude summary judgment on both claims.

**1.** ***Plaintiffs' Product Design Claim***

■■ As noted above, plaintiffs bringing suit for product design infringement must show that the product design has acquired distinctiveness through secondary meaning, there is a likelihood of confusion between the products, and the product design is not functional. *Wal–Mart Stores, Inc.,* 529 U.S. at 215–16, 120 S.Ct. 1339. Plaintiffs argue that they have established all three elements and thus are entitled to summary judgment as a matter of law. Walgreens argues that plaintiffs have not established secondary meaning and that material issues of fact remain as to customer confusion, but that it is nonetheless entitled to summary judgment because plaintiffs' product designs are functional as a matter of law.

For the reasons set forth below, I find that neither party is entitled to summary

judgment as material issues of fact remain regarding secondary meaning, likelihood of confusion, and the functionality of the relevant designs.

### a. *Distinctiveness*

#### (I) *Applicable Law*

 Secondary meaning attaches when, " 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.' " *Id.* at 211, 120 S.Ct. 1339 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)) (alteration in original). "Proof of secondary meaning entails vigorous evidentiary requirements." *Thompson Med. Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir.1985). To determine whether secondary meaning has attached, the court considers the following six factors: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 Fed.Appx. 615, 618 (2d Cir.2008) (internal quotation marks and citation omitted). No single factor is determinative. *Thompson Med. Co.*, 753 F.2d at 217.

#### (ii) *Application*

Summary judgment may not be awarded to either side regarding secondary meaning of the product design because, at a minimum, the following issues of fact exist:

First, Walgreens disputes the extent of any unsolicited media coverage of LNC's products. (Buratti Decl. Ex. B at II:20–22, Ex. H (comparing LNC President's testimony with Internet research)).

Second, regarding plaintiffs' sales success, Walgreens challenges several aspects of plaintiffs' evidence, including LNC's re-

purchase rates (Def. Response to Pls. Add'l 56.1 Facts at 56 ("As LNC's corporate designee testified, plaintiffs have no ability to know how many repeat sales of their products may have actually occurred." (citing Buratti Reply Decl. Ex. E at 8:3–9:3))), and LNC's target market (*id.* at 57–58 (highlighting discrepancies in Nouri Edward Hakim's testimony and citing Buratti Reply Decl. Ex. A at II:153:9–16, II:268:7–69:21, II:38:20–41:8)). As noted, Walgreens points to specific evidence to support its challenges to plaintiffs' evidence.

Third, as to the intentional copying factor, LNC alleges that Walgreens, after having access to confidential information regarding LNC products, commissioned and approved the "knock-off" sippy cups. LNC's sales representative, Tim McQuillen, and former president, Jack Hakim, testified that they were invited to a meeting with Walgreens's buyer, where they divulged confidential information about LNC products. (Jack Hakim Decl. ¶¶ 33–36; McQuillen Decl. ¶¶ 30–31). Walgreens, however, does not concede that it had access to LNC's confidential information. (Def. Response to Pls. Add'l 56.1 Facts at 66–67). Moreover, the parties dispute to what extent, if at all, Walgreens dictated and approved the allegedly infringing designs. (Malynn Opp. Decl. Ex. 7; Def. Mem. Ex. 7; Nouri Edward Hakim Decl. ¶¶ 44, 77; Jack Hakim Decl. ¶¶ 46–61; McQuillen Decl. ¶ 46).

Fourth, as to the length and exclusivity factor, LNC provides evidence that, when it introduced the hard and soft spout cups in 2003 (Shamosh Decl. Ex. 1 (citing customer e-mails from 2003 referring to the "Soft Spout Gripper Cup"); McQuillen Decl. ¶¶ 18, 23), no other cups in the marketplace had the same look and appear-

ance as the allegedly infringed cups (McQuillen Decl. ¶¶ 11, 18). Walgreens, however, provides testimony and evidence disputing both the length and exclusivity alleged by LNC. (Buratti Decl. Ex. B at I:162:9–19).

As demonstrated above, substantial questions of material fact exist as to secondary meaning that must be left for a jury. *See New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, 312 F.Supp.2d 195, 209 (D.Conn.2004) (dismissing a motion for summary judgment because evidence pertaining to secondary meaning factors revealed triable issues of material fact).

### b. *Likelihood of Confusion*

Even if I were to find secondary meaning in plaintiffs' product design, plaintiffs would still not be entitled to summary judgment because material issues of fact exist as to the likelihood of customer confusion.

### (I) *Applicable Law*

■ Courts in this Circuit apply the following factors, established in *Polaroid Corp. v. Polarad Electronics Corp.*, to determine whether a likelihood of confusion exists: (1) strength of plaintiff's mark, (2) similarity of competing marks, (3) competitive proximity of the products, (4) likelihood that plaintiff will "bridge the gap" and offer a product like defendant's product, (5) actual confusion, (6) defendant's good faith, (7) quality of defendant's product, and (8) sophistication of the buyers. 287 F.2d 492, 495 (2d Cir.1961). "Summary judgment based on likelihood of confusion under the *Polaroid* analysis is appropriate where the undisputed evidence would lead only to one conclusion." *U-Neek, Inc. v. Wal–Mart Stores, Inc.*, 147 F.Supp.2d 158, 173 (S.D.N.Y.2001) (citing

*Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir.1996)) (internal quotation marks omitted). " 'The bottom line on a motion for summary judgment is not how many factors favor each side but whether a reasonable trier of fact might differ as to likelihood of confusion.' " *Id.* (quoting *Physicians Formula Cosmetics Inc. v. W. Cabot Cosmetics, Inc.*, 857 F.2d 80, 85 (2d Cir.1988)).

### (ii) *Application*

Reasonable triers of fact might differ as to whether the product designs at issue create a likelihood of customer confusion. Among many debatable points are the similarities between LNC and Royal King's designs, whether the NUBY and WAGI trademarks' prominence on the cups and their packaging resolves any confusion, *see Playtex Prods. v. Ga.-Pac. Corp.*, 390 F.3d 158, 164 (2d Cir.2004), and whether the allegedly infringing products appeared affiliated with LNC, *id.* ("[I]n some circumstances, the addition of a trade name does not necessarily alleviate the problem of confusion of marks, and indeed, can aggravate it, as a purchaser could well think plaintiff had licensed defendant as a second user." (internal citations and quotation marks omitted)). Further, there are clear factual disputes as to whether Walgreens acted in bad faith by exploiting plaintiffs' confidential information, deceiving plaintiffs into supplying extra inventory for a "bait and switch" scheme, and commingling LNC products with Royal King products above LNC signs. (Pls. Add'l 56.1 Facts ¶¶ 100–07; Nouri Edward Hakim Supp. Decl. ¶¶ 2–4; Def. Response to Pls. Add'l 56.1 Facts at 73–75). Finally, reasonable triers of fact might differ as to whether plaintiffs' evidence regarding actual customer confusion is legitimate. (Nouri Edward Hakim Decl. Ex. 5 (Bran-

dy Thomas Affidavit); Def. Add'l 56.1 Facts ¶¶ 118–20 (attacking relevance and legitimacy of Thomas's Affidavit); Barten Opp. Decl. Ex. 9). Accordingly, I will not award summary judgment to either party on the trademark infringement claim for plaintiffs' product design.

### c. *Functionality*

#### (I) *Applicable Law*

 Walgreens argues that, regardless of whether there is secondary meaning and likelihood of customer confusion, plaintiffs' trade dress is functional and, thus, not entitled to protection. To show that a product is non-functional, plaintiffs must demonstrate that their design elements are configured in a distinctive way, rather than the only efficient way. *See Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1148 (2d Cir.1987) ("[T]he absence of alternative constructions performing the same function ... renders the feature functional."). When evaluating functionality, courts in this Circuit examine whether the design as a whole is functional, not whether the individual elements that make up the design are functional. *See Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 Fed.Appx. 615, 620–21 (2d Cir.2008) (affirming district court's determination that "it was improper for defendants to break the trade dress down into specific elements and call them functional, because plaintiffs' claim is that the combination and arrangement of those design elements comprise the trade dress at issue").[3]

#### (ii) *Application*

Walgreens argues that plaintiffs' product designs are functional as a matter of law because all of the cups' features are necessary to the design of a sippy cup, as evidenced by the presence of those features in many competitors' cups. (Def. Mem. at 17–20; Buratti Decl. Ex. A at I:65–66, 75–82 & Exs. D, F, G, Q, R). Walgreens contends that plaintiffs admitted that "competitors use each and every allegedly protectable feature" of their designs. (Def. Mem. at 2; Buratti Decl. Ex. A at I:65–66, I:75–82). In response, plaintiffs (1) deny making any such admissions, (2) attack the quality of Walgreens's evidence regarding plaintiffs' competitors, which consists mostly of fuzzy, thumbnail, Internet images, (3) argue that the combination of their design features renders the designs non-functional, and (4) contend that Walgreens's own evidence demonstrates the various ways in which a sippy cup's form, shape, texture, size, and graphic features may be designed. (Pls. Opp. Mem. at 15–19). Moreover, the parties dispute whether certain of plaintiffs' utility patents overlap with the allegedly infringed designs. (Def. Memo at 9–11; Buratti Decl. Ex. A at II:140, II:144, II:183–86, Exs. K–N; Pls. Opp. Mem. at 20–22; Cohen Opp. Decl. ¶¶ 101–20; Nouri Edward Hakim Decl. ¶¶ 37–38). These conflicts in evidence and questions of fact preclude judgment as a matter of law on the issue of functionality. Accordingly, this question shall be left for the jury and my earlier determination denying summary judgment on the question of trademark infringement stands.

---

**3.** Defendant argues that the Court should consider the product design's individual features when determining functionality. In support of this approach, defendant relies on *Textron, Inc. v. U.S. International Trade Communications*, 753 F.2d 1019 (Fed.Cir.1985). The court in *Textron*, however, explicitly noted that "the determination of whether an overall design is functional should be based on the superiority of the design as a whole." *Id.* at 1026. Moreover, as stated above, the Second Circuit considers the product design as a whole. *See Cartier, Inc.*, 294 Fed.Appx. at 620. Defendant's argument is rejected.

### 2. Plaintiffs' Product Packaging Claim

 Plaintiffs bringing trademark infringement claims as to product packaging must establish distinctiveness, likelihood of confusion, and non-functionality. *Fun–Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir.1997). Plaintiffs argue that they have established each of these elements and thus are entitled to summary judgment on this claim. Defendant argues that plaintiffs have not established distinctiveness, and thus Walgreens is entitled to summary judgment on this claim. I find that material issues of fact preclude summary judgment in favor of either party.

#### a. *Distinctiveness*

##### (I) *Applicable Law*

 As noted above, plaintiffs claiming infringement of product packaging may prove the first element, distinctiveness, by showing inherent distinctiveness or secondary meaning. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir.2001). "Because manufacturers and retailers have a 'virtually unlimited' choice of packaging and labeling materials available to them, most packaging trade dress is [inherently distinctive]." *Nora Bevs., Inc. v. Perrier Group of Am. Inc.*, 164 F.3d 736, 743 (2d Cir.1998). Nonetheless, the Supreme Court has ruled that, when it is difficult to distinguish the product design from the packaging, the court should err on the side of caution and require a showing of secondary meaning. *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000); *see Kaufman & Fisher Wish Co. v. F.A.O. Schwarz*, 184 F.Supp.2d 311, 317–18 (S.D.N.Y.2001).

##### (ii) *Application*

Walgreens argues that plaintiffs' product designs merge with their packaging, and thus this Court must require a showing of secondary meaning. (Def. Opp. Mem. at 21–22). Walgreens posits that the "alleged packaging is nothing more than clear shrink-wrap with text that becomes the shape of the bottle ... [and] therefore merges with the product design itself." (*Id.*). In light of the Supreme Court's determination that courts should err on the side of a higher evidentiary standard in cases where the product packaging is arguably part of the product design, I conclude, for purposes of this motion only, that the product and packaging are indistinguishable and require a showing of secondary meaning.

Plaintiffs' evidence in favor of secondary meaning for their product packaging is the same evidence discussed above regarding their product design. Thus, for the reasons stated above, triable issues of fact exist as to whether secondary meaning attaches to plaintiffs' product packaging that must be left for the jury.

#### b. *Likelihood of Confusion*

Even if I were to find that the product design and packaging are clearly distinguishable and that plaintiffs established inherent distinctiveness, plaintiffs would still not be entitled to summary judgment. Indeed, I have already considered all of plaintiffs' evidence regarding the likelihood of confusion and ruled that material issues of fact preclude summary judgment on this issue.

#### c. *Functionality*

To the extent that Walgreens argues that the product packaging is non-functional as a matter of law, and thus, not entitled to protection regardless of its distinctive-

ness or likelihood to cause customer confusion, this argument is rejected. First, if Walgreens is correct that the product design and packaging have merged, then my earlier determination that material issues of fact exist as to whether the product design is functional would apply to the product packaging as well. Moreover, even if the product design and packaging are distinguishable, material issues of fact exist as to whether the packaging is functional. A reasonable jury could find, for example, that there are alternate ways the packaging, including its graphics and lettering, could have been designed. *Fun-Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993, 1002 (2d Cir.1997). Indeed, plaintiffs themselves previously packaged their cups in large cardboard boxes as opposed to individual shrinkwrap. (Pls. Reply Mem. Ex. 4). Accordingly, neither party is entitled to summary judgment on the packaging claim.

## C. *Plaintiffs' Unfair Competition Claim*

New York unfair competition law mirrors the Lanham Act's trademark infringement standard in many ways, but does not always require a showing of secondary meaning. Indeed, the Second Circuit has noted that, while "a claim for unfair competition under New York law requires proof of a competitor's deliberate use of a non-functional [trade dress] and likelihood of public confusion[, p]roof of secondary meaning is not required." *Morex S.p.A. v. Design Inst. Am., Inc.*, 779 F.2d 799, 801 (2d Cir.1985) (citing *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 952–53 (2d Cir.1980)). To the extent defendant claims that this is not the law in this Circuit or that I should depart from this precedent, these claims are rejected.

As plaintiffs suggest, New York courts have found trademark infringement in the absence of secondary meaning when plaintiffs have shown "intentional palming off" or "misappropriation of business value." *See* 2 McCarthy on Trademarks and Unfair Competition § 15:38 (J. Thomas McCarthy ed., 4th ed. 2009). Plaintiffs' claims under these theories, however, center on findings of bad faith and confusion of customers. (*See* Pls. Reply Mem. at 4). *See also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir.1995) ("The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." (internal quotation marks and citation omitted)); *Sly Magazine, LLC v. Weider Publs. L.L.C.*, 346 Fed.Appx. 721, 723 (2d Cir. 2009). As discussed above, material issues of fact exist as to whether Walgreens intentionally copied LNC's products in bad faith and whether customers might in fact be confused. Accordingly, summary judgment is denied as to this claim.

## D. *Plaintiffs' NYGBL Claim*

Plaintiffs assert that Walgreens violated NYGBL § 349 by conducting a "bait and switch," and misleading customers by commissioning misleading "knock-off" products and "palming them off" to confused customers. (Pls. Reply Mem. at 4). "It is well settled, however, that infringement claims are not cognizable under [§ 349] unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." *Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*, 198 F.Supp.2d 474, 486–87 (S.D.N.Y. 2002); *see U–Neek, Inc. v. Wal–Mart*

*Stores, Inc.*, 147 F.Supp.2d 158, 176 (S.D.N.Y.2001). Moreover, "[i]t is well-established that trademark infringement actions alleging only general consumer confusion do not threaten ... direct harm to consumers for purposes of stating a claim under section 349...."[4] *Perkins Sch. for the Blind v. Maxi–Aids, Inc.*, 274 F.Supp.2d 319, 327 (E.D.N.Y.2003) (internal quotation marks and citation omitted); *see Cartier v. Samo's Sons, Inc.*, No. 04 Civ. 2268, 2005 WL 2560382, 2005 U.S. Dist. LEXIS 23395 (S.D.N.Y. Oct. 11, 2005). Accordingly, as plaintiffs have not properly pled a claim under § 349, this claim is dismissed.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is denied. Defendant's motion for summary judgment is granted, but only in regard to the NYGBL § 349 claim. All other issues remain for the jury. The parties shall appear for a pre-trial conference on April 23, 2010, at 10:00 a.m.

SO ORDERED.

---

[4]. Plaintiffs, in their reply memorandum of law, once mention that Walgreens "falsely advertised or promoted its products as coming from Luv n' Care," in violation of § 349. (Pls. Reply Memo at 4). Plaintiffs do not, however, discuss the legal standards relevant to a false advertising claim, nor do they bring a cause of action under NYGBL § 350, the provision prohibiting false advertising. N.Y. Gen. Bus. Law § 350 (2010). Accordingly, I do not consider whether such a claim would survive summary judgment.